UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

WALTER J. SCOTT, JR.,                                     :

                          Plaintiff            :       17-CV-2772 (DLC)

      -against-                                     :

BANGKO SENTRAL NG PILIPINAS;                             :
PHILIPPINES VETERANS BANK;
BANKWISE, INC.; WISE HOLDINGS, INC.;                     :
ALBERTO V. REYES; RICARDO A.
BALBIDO; ROBERT F. DE OCAMPO                             :
NONILO C. CRUZ; AND JOHN AND/OR
JANE DOES 1-20,                                          :

                    Defendants.     :

-----------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS BY DEFENDANT
## PHILIPPINES VETERANS BANK

BAKER & McKENZIE LLP
David Zaslowsky
452 Fifth Avenue
New York, New York 10018
Telephone: +1 212 891 3518
Facsimile: +1 212 310 1718
David.Zaslowsky@bakermckenzie.com

**Attorneys for Defendant Philippines
Veterans Bank**

September 27, 2017

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTUAL ALLEGATIONS .........................................2

ARGUMENT........................................................................................................3

    Point I

    THE COURT LACKS PERSONAL JURISDICTION OVER PVB ..................3

        A. Legal Standard ....................................................................................3

        B. The Court Lacks General Jurisdiction ................................................4

        C. The Court Lacks Specific Jurisdiction................................................8

        D. There Is No Independent Jurisdiction Over The RICO Claim under
           Rule 4(k)(2) ......................................................................................10

    Point II

    THE CASE SHOULD ALSO BE

    DISMISSED ON GROUNDS OF FORUM NON CONVENIENS...............12

        A. Legal Standard ..................................................................................12

        B. Plaintiff's Choice of This New York Forum For His Philippines
           Dispute Is Entitled To No Deference..........................................14

        C. The Philippines Provide An Adequate Alternative Forum ...............16

        D. The Private Interest Factors Favor Pursuit of This Action in The
           Philippines .......................................................................................18

        E. The Public Interest Factors Favor Pursuit of This Action in The
           Philippines .......................................................................................19

CONCLUSION..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*,
    2015 U.S. Dist. LEXIS 44031 (S.D.N.Y. March 31, 2015) ...................................................10

*Alcoa S.S. Co. v. M/V Nordic Regent*,
    654 F.2d 147 (2d Cir. 1980) ...................................................14

*Bersoum v. Abotaeta*,
    2017 U.S. Dist. LEXIS 127460 (S.D.N.Y. Aug. 10, 2017) ...................................................11

*Blanco v. Banco Indus. de Venezuela*,
    997 F.2d 974 (2d Cir. 1993) ...................................................17

*BNSF Ry. v. Tyrrell*.
    137 S. Ct. 1549 (2017) ...................................................5, 7

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017) ...................................................5, 8, 9, 10

*Brown v. Lockheed Martin Corp.*
   , 814 F.3d 619 (2d Cir. 2016) ...................................................6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...................................................8

*Capital Records, LLC v. SeeqPod, Inc.*,
    2010 US. Dist. LEXIS 9832 (S.D.N.Y. Feb. 1, 2010) ...................................................3

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2001) ...................................................20

*Construtora Norberto Oberbrecht S.A. v. Gen. Elec. Co.*,
    2007 U.S. Dist. LEXIS 79219 (S.D.N.Y. Oct. 12, 2007) ...................................................14

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*,
    918 F.2d 1446 (9th Cir. 1990) ...................................................17

*Cordice v. Liat Airlines*,
    2015 U.S. Dist. LEXIS 126704 (E.D.N.Y. Sept. 22, 2015) ...................................................12

*Credit Lyonnais Sec., Inc. v. Alcantara & Cavelba, S.A.*,
    183 F.3d 151 (2d Cir. 1999) ...................................................3

*Cruz v. Maritime Co. of Philippines*,
    549 F. Supp. 285 (S.D.N.Y. 1982) ...................................................................................17

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) .................................................................................1, 3, 5, 8

*Del Fierro v. PepsiCo Int'l*,
    897 F. Supp. 59 (E.D.N.Y. 1995) ..................................................................................17

*DiRienzo v. Philip Servs. Corp.*,
    232 F.3d 49 (2d Cir. 2000) ..........................................................................................16

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) ..........................................................................................19

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*,
    806 F. Supp. 2d 712 (S.D.N.Y. 2011) ..........................................................................15

*Goldberg v. UBS AG*,
    660 F. Supp. 2d 410 (E.D.N.Y. 2009) .....................................................................12, 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................................4, 8, 10

*Gucci Am., Inc. v. Weizing Li*,
    768 F.3d 122 (2d Cir. 2014) ..........................................................................................6

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947).........................................................................................12, 18, 20

*Helicopteros Nacionales De Colombia v. Hall*,
    466 U.S. 408 (1984).....................................................................................................7, 9

*Ilusorio v. Ilusorio-Bildner*,
    103 F. Supp. 2d 672 (S.D.N.Y. 2000) ..........................................................16, 18, 19, 20, 21

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).........................................................................................................4

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ...............................................................................13, 14, 15

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) ...........................................................................................3

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998) ..............................................................................3

*Keeton v. Hustler Magazine, Inc.*,
 465 U.S. 770 (1984) ...........................................................................................................8

*Lfoundry Rousset SAS v. ATMEL Corp.*,
 2015 U.S. Dist. LEXIS 95165 (S.D.N.Y. July 21, 2015) ...................13, 14, 15, 16, 19, 20, 21

*In re M/V MSC Flaminia*,
 107 F. Supp. 3d 313, 322 (S.D.N.Y. 2015) .......................................................................10

*In re Magnetic Audiotape Antitrust, Litig.*,
 334 F.3d 204 (2d Cir. 2003) ...............................................................................................3

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
 84 F.3d 560 (2d Cir. 1996) ..................................................................................................3

*In re MS 'ANGELN' GMBH & Co. Kg.*,
 510 Fed. App'x 90 (2d Cir. 2013) .....................................................................................10

*Niv v. Hilton Hotels Corp.*,
 710 F. Supp. 2d 328 (S.D.N.Y. 2008) ...............................................................................15

*Norex Petroleum Ltd. v. Access Indus.*,
 416 F.3d 146 (2d Cir. 2005) ........................................................................................13, 16

*In re Optimal U.S. Litig.*,
 837 F. Supp. 2d (S.D.N.Y. 2011) ......................................................................................21

*Peregrine Myanmar Ltd. v. Segal*,
 89 F.3d 41 (2d Cir. 1996) ..................................................................................................18

*Piper Aircraft Co v. Reyno*,
 545 U.S. 235 (1981).............................................................................................................16

*In re Platinum & Palladium Antitrust Litig.*,
 2017 U.S. Dist. LEXIS 46624 (S.D.N.Y. March 28, 2017) ...............................................11

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
 329 F.3d 64 (2d Cir. 2003) ................................................................................................13

*Qunitero v. Klaveness Ship Lines*,
 914 F.2d 717 (5th Cir. 1990) .............................................................................................17

*Realuyo v. Villa Abrille*,
 2003 U.S. Dist. LEXIS 11529 (S.D.N.Y. July 8, 2003) .........................................13, 14, 17

*Robinson v. Overseas Military Sales Corp.*,
 21 F.3d 502 (2d Cir. 1994) ..................................................................................................3

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999)................................................................................3

*Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*,
    549 U.S. 422 (2007)..........................................................................14, 15

*Sonera Holdings B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) ..................................................................6

*Transunion Corp. v. PepsiCo, Inc.*,
    640 F. Supp. 1211 (S.D.N.Y. 1986) ....................................................17

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ..............................................................17

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014).................................................................8, 9, 11

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)................................................................................4

**State Cases**

*Landoil Resources Corp. v. Alexander & Alexander Svcs., Inc.*,
    77 N.Y.2d 28 (1990)...............................................................................4

*Laufer v. Ostrow*,
    55 N.Y.2d 305 (1982).............................................................................5

**Federal: Statutes, Rules, Regulations & Constitutional Provisions**

Fed. R. Civ. P. 4............................................................................................7

Fed. R. Civ. P. 4(k)(2) ...................................................................10, 11, 12

**State: Statutes, Rules, Regulations & Constitutional Provisions**

New York Civil Procedure Law and Rules (N.Y. C.P.L.R.) § 301 .................4

New York Civil Procedure Law and Rules § 302 .........................................7

## PRELIMINARY STATEMENT

Plaintiff Walter J. Scott, Jr. alleges in the First Amended Original Complaint (the "Complaint") that, during the period of about 2003 to 2007, he was supposedly wronged in connection with an investment that he made in a bank in the Philippines. Everything about this case concerns the Philippines. The claim is against banks and individuals in the Philippines, including the Philippines government's central bank. It is based entirely on actions occurring in the Philippines. It repeatedly references the law of the Philippines. The claimed losses are measured in Philippine pesos and by reference to properties in the Philippines. Even the Plaintiff's attorney *cum* Plaintiff is not located in New York—according to the signature block on his email, he has presences in Texas and the Philippines.[1]

There are numerous grounds for dismissal, but this motion is brought on two grounds -- lack of personal jurisdiction and forum non conveniens. First, the Supreme Court's landmark decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), and its progeny, make clear that there can be no general personal jurisdiction over a corporation like Defendant Philippines Veterans Bank ("PVB") unless it is "at home" in New York. This is paradigmatically the place of incorporation and the principal place of business. Because PVB is a Philippines bank with its principal place of business in the Philippines, it is not "at home" in New York, meaning that there is no basis to assert general jurisdiction over PVB. There is also no basis for specific jurisdiction because none of the alleged wrongdoing giving rise to this action occurred in New York.

---

[1] A true and correct copy of an email from Plaintiff to some of the Defendants is annexed as Exhibit B to the accompanying Declaration of Robert De Ocampo dated September 22, 2017 (the "de Ocampo Decl.").

Second, New York is not the proper forum for this dispute, even if personal jurisdiction could be established. As stated above, everything about this lawsuit points to the Philippines and nothing points to New York. The parties are in the Philippines, the witnesses are there, and the evidence is there. The primary contract on which Plaintiff relies is governed by Philippine law and, in any event, Philippine law would govern every aspect of this dispute. Thus, even if this Court had jurisdiction, this case has no business in a New York court and should be dismissed under the doctrine of forum non conveniens.

For these reasons, the Complaint should be dismissed in its entirety. And, because there is no reasonable likelihood that these defects could be cured by amendment, that dismissal should be with prejudice.

## STATEMENT OF FACTUAL ALLEGATIONS

PVB recognizes that, for purposes of this motion to dismiss, the Court will assume as true the facts alleged in the Complaint. Those "facts" relevant to this Motion are recited below as necessary.[2] In short, Plaintiff alleges that he, or the Philippines-based bank (Bankwise) from which he was purportedly assigned claims (yet curiously includes as a defendant in this action), was defrauded through a restructuring scheme. Without identifying any specific statements, any specific actions, or even any specific actors, Plaintiff claims that this led him to suffer the loss of his investment and caused the bank in which he purportedly invested to lose its value. The amount of these losses is entirely unclear. One of the few things about the Complaint that is clear, however, is the absence of any link whatsoever to New York.

---

[2] PVB makes no admissions regarding the veracity of Plaintiff's "factual" allegations by recounting them in this brief.

# ARGUMENT

## Point I

## <u>THE COURT LACKS PERSONAL JURISDICTION OVER PVB</u>

### A.    Legal Standard

If personal jurisdiction is lacking, a court is powerless to adjudicate.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).    Because PVB has challenged personal jurisdiction, Plaintiff bears the burden of establishing that jurisdiction is proper.  *In re Magnetic Audiotape Antitrust, Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996).    To do this, Plaintiff must identify with specificity each defendant's alleged role in the challenged conduct.  *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998).    The Court need not draw "argumentative inferences" in Plaintiffs favor.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).    Nor need it accept "broad conclusory statements of the relevant statutory language."  *Capital Records, LLC v. SeeqPod, Inc.*, 2010 US. Dist. LEXIS 9832, at *4 (S.D.N.Y. Feb. 1, 2010) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler*, 134 S. Ct. at 753 (2014).    New York's long arm statute is more restrictive than the federal due process inquiry.  *Credit Lyonnais Sec., Inc. v. Alcantara & Cavelba, S.A.*, 183 F.3d 151, 153 (2d Cir. 1999).  It allows a court to exercise jurisdiction over a non-resident defendant only if the defendant transacts business in New York and the cause of action arises out of that business.  *Id.*  Thus, if the jurisdictional allegations do not satisfy the more permissive standards of federal due process (they do not), they must also fail under New York law.

It is black-letter law that the Court may exercise personal jurisdiction over a non-resident

defendant like PVB only if PVB has "certain minimum contacts" with New York "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Additionally, PVB's "conduct and connection with [New York]" must be such that PVB "should reasonably anticipate being haled into court" there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In order to meet his burden to establish jurisdiction, Plaintiff must establish either that (i) PVB has contacts with New York that are "so continuous and systematic as to render [it] essentially at home", subjecting it to general jurisdiction, or (ii) PVB engaged in the type of "purposeful availment" or "purposeful direction" that justifies the Court exercising specific jurisdiction, that Plaintiff's claims arise out of PVB's contacts with New York, and that the exercise of jurisdiction is not unreasonable. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924-25 (2011).

As set forth below, neither general nor specific jurisdiction can be established over PVB.

## B.    The Court Lacks General Jurisdiction

Until recently, a foreign corporation was amenable to general jurisdiction in New York state courts under "CPLR 301 if it ha[d] engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction [was] warranted." *Landoil Resources Corp. v. Alexander & Alexander Svcs., Inc.*, 77 N.Y.2d 28, 33-34 (1990). New York precedent had long held that this "doing business test" (general jurisdiction) conformed with constitutional due process limits by requiring that "the aggregate of the corporation's activities in the State [is] such that it may be said to be 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity' and [that] the quality and nature of the corporation's contacts with the State [are] sufficient to make it

reasonable and just according to 'traditional notions of fair play and substantial justice' that it be required to defend the action here." *Laufer v. Ostrow*, 55 N.Y.2d 305, 310 (1982).

However, personal jurisdiction jurisprudence changed dramatically in 2014 with the U.S. Supreme Court's landmark decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). *Daimler* rejected the exercise of general jurisdiction over a foreign parent company in California based on its subsidiary's conduct of business there. In so doing, the U.S. Supreme Court rejected the traditional "continuous and systematic course of business" test as a basis for general jurisdiction over foreign corporations, characterizing that formulation as "unacceptably grasping." *Id.* at 760. Instead, the U.S. Supreme Court held that general jurisdiction over a corporation only comports with due process if the corporation can be regarded as fairly "at home" in the forum. The Supreme Court identified a corporation's place of incorporation and its principal place of business as the paradigm bases for where a corporation was "at home," and thus subject to general jurisdiction. *Id.*

This rule was reinforced recently in *BNSF Ry. v. Tyrrell*. 137 S. Ct. 1549, 1559 (2017). There, the U.S. Supreme Court found jurisdiction lacking (and reversed the decision of the Montana Supreme Court which had found general jurisdiction) because the defendant, which was neither incorporated nor had its principal place of business in Montana, was not "at home" in the state, notwithstanding defendant's ownership of more than 2,000 miles of railroad track and employment of more than 2,000 employees in Montana. *Id.* On the heels of *Daimler*, this case made clear that absent an "exceptional case" (yet to be defined by the U.S. Supreme Court) a corporation is only amenable to general jurisdiction in New York if it is incorporated in New York or has its principal place of business in New York. *Id.* at 761 & n.19; *see also*, *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1778 (2017) (no general jurisdiction

despite five research facilities, more than 400 employees, government outreach office, and more than $900 million in sales in forum state).

Second Circuit cases since *Daimler* have uniformly demonstrated that the test for general jurisdiction is whether the defendant is incorporated in New York or has its principal place of business in New York. As explained in *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016), "when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous' are extraordinarily unlikely to add up to an exceptional case under *Daimler*." *See also, e.g., Gucci Am., Inc. v. Weizing Li*, 768 F.3d 122, 135 (2d Cir. 2014) ("Aside from 'an exceptional case', the Court explained [in *Daimler*], a corporation is at home ... only in a state that is the company's formal place of incorporation or its principal place of business.") (emphasis added); *Sonera Holdings B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) ("[A]lthough *Daimler* and *Goodyear* do not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business, those cases make clear that even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone sufficient to render it at home in a forum.") (citations omitted), *cert denied*, 134 S. Ct. 2888 (2014).

*Daimler* and its progeny made the test for establishing general jurisdiction over corporations a simple and objective one. General jurisdiction exists at the place of incorporation and the principal place of business.[3] PVB is a bank incorporated in the Philippines, with its principal place of business in the Philippines. *See* de Ocampo Decl., ¶¶ 2-3; *see also* Compl.

_____

[3] As already noted, the Supreme Court also left open the possibility that in "exceptional circumstances" a corporation's extensive operations in some other forum might support general jurisdiction. There is, however, nothing exceptional in this case.

¶ 28. Thus, there is no general jurisdiction over PVB.

The vague allegations of purported jurisdictional links to New York found in paragraph 53 of the Complaint do not save Plaintiff's case. Plaintiff claims that

> This Court has personal jurisdiction over the Defendants pursuant to Federal Rule of Civil Procedure 4 and New York Civil Procedure Law and Rules (N.Y. C.P.L.R.) § 302. Each of the Bank Defendants avail themselves of the state banking system in New York to (a) provide services to their U.S.-based customers; (b) complete transactions on the banks' own behalf; and (c) attempt to grow their own business through acquisitions, joint ventures, and partnerships. PVB, by way of example, conducts banking business throughout the United States directly, and through its wholly owned subsidiary, Intervest Projects, Inc. It is also the recipient of substantial funds provided by the United States Government in connection with Filipino World War II veteran benefits, and facilitated as banker purchases of U.S. military helicopters by the Philippines. ...

Compl. ¶ 53. These are the types of allegations that one might have expected to see in the past to attempt to meet the superseded tests in the *Landoil Resources* and *Laufer* cases quoted above.

But the law has changed with *Daimler*. Now, the focus is on the place of incorporation and principal place of business. PVB's alleged use of the New York banking system to complete transactions and "to grow its business," or the even more nebulous receipt of federal funds and financing of purchases of U.S. equipment by the Philippines government, are insufficient to establish general jurisdiction. On this, the Supreme Court has clearly spoken: "in state business ... does not suffice to permit the assertion of general jurisdiction over claims ... that are unrelated to any activity occurring in [the forum state]." *BNSF Railway*, 137 S. Ct. at 1559.[4]

---

[4] Indeed, the allegations here would not meet the general jurisdiction test even under pre-*Daimler* Supreme Court jurisprudence. The Supreme Court has refused to apply general jurisdiction based on forum-state contacts significantly more substantial than those alleged here. *See, e.g., Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 416 (1984) (finding no general jurisdiction based on forum contacts of contract negotiations, sending personnel to the forum, purchasing services and equipment from a forum company, and engaging with a bank in

Simply put, there is no basis to assert general jurisdiction over PVB.

## C. The Court Lacks Specific Jurisdiction

Just as the Court lacks general jurisdiction, so too does it lack specific jurisdiction. "In order for a state court to exercise specific jurisdiction, the *suit* must 'arise out of or relate to the defendant's contacts with the *forum*.'" *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *Daimler*, 134 S. Ct. at 924) (emphasis in original); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) ("'For a state to exercise jurisdiction consistent with due process, the defendant's <u>suit-related conduct</u> must create a substantial connection with the forum state.'") (emphasis added). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State and is therefore subject to the States' regulation.' For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919).

The Supreme Court was clear in its most recent decision on the subject:

> In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.

*Bristol-Myers Squibb*, 137 S. Ct. at 1781 (citations omitted).

Even if case specific contacts could be established, "the relationship [to New York] must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in

the forum); *Goodyear*, 564 U.S. at 920 (declining to find general jurisdiction based on sales of petitioner's product made in the forum through intermediaries).

original). Thus, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state." *Id.*; *see also Helicopteros Nacionales*, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

Finally, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. It is not enough that the effects of the challenged actions *may* be felt in New York, there must be specific, intentional conduct creating the necessary New York ties. *Id.* at 1123. In other words, jurisdiction must be based on New York contacts by PVB that give rise to the claim—it cannot be imputed through actions of other defendants or individuals.

The only part of the complaint that touches on the issue of specific jurisdiction is the following allegation from paragraph 54:

> This Court has personal jurisdiction over Defendants because the facts giving rise to this dispute arise out of conduct committed in part in New York. Defendants and those acting in concert with them directly and indirectly effected their scheme through in person discussions with Plaintiff both in the Philippines and in the United States, as well as by phone and electronic communications originating in both the Philippines and the United States—including New York.

Compl. ¶ 54.[5] This is not sufficient. Significantly, in the portion of the Complaint with the

---

[5] Paragraph 53 of the Complaint is quoted in the previous section. Those allegations do not support specific jurisdiction because none of them relate to the claim that Plaintiff is asserting, but instead are only alleged general forum contacts. "For specific jurisdiction, a defendant's general connections with the forum are not enough." *Bristol-Myers Squibb*, 137 S. Ct. at 1782; *see also Id.* ("When there is no such connection [between the challenged activities and the forum], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected

allegations of supposed wrongdoing, New York is not mentioned once. That is, there is not a single factual allegation of any conduct on the part of PVB (or anyone else for that matter) that took place in New York. Simply put, there is no basis to assert specific jurisdiction over PVB.

### D. There Is No Independent Jurisdiction over The RICO Claim under Rule 4(k)(2)

Federal Rule of Civil Procedure 4(k)(2) "provides for personal jurisdiction in a case (1) aris[ing] under federal law, (2) where a defendant is not subject to the general jurisdiction of any one state, and (3) where exercising jurisdiction [would be] consistent with the United States constitution and laws." *In re MS 'ANGELN' GMBH & Co. Kg.*, 510 Fed. App'x 90, 91-92 (2d Cir. 2013). Plaintiff asserts a claim for RICO. Thus, theoretically, Plaintiff might allege that PVB has contacts with the United States that should be a basis for jurisdiction. Any such argument would fail.

First and most simply, Plaintiff has failed to allege that PVB is not subject to jurisdiction in any other state. Indeed, to the contrary, Plaintiff alleges in paragraph 53 of the Complaint that Defendants are subject to jurisdiction in New York. This mandates rejection of any claim of jurisdiction under Rule 4(k)(2). *See, e.g., In re M/V MSC Flaminia*, 107 F. Supp. 3d 313, 322 (S.D.N.Y. 2015) (rejecting application of Rule 4(k)(2) because "[plaintiff] has not certified that [defendant] is not subject to jurisdiction in any other state"); *7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*, 2015 U.S. Dist. LEXIS 44031, at *44-*45 (S.D.N.Y. March 31, 2015) (rejecting application of Rule 4(k)(2) to claim against foreign bank based on failure to certify lack of jurisdiction in other states in order to avoid encouraging plaintiffs "to omit any allegations tying

---

activities in the State."); *Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). As the Supreme Court said most recently in *Bristol-Myers Squibb*, "in order for a state court to exercise specific jurisdiction, "the *suit*" must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*." 137 S. Ct. at 178.

defendants to a specific state, in hopes of engaging the broader minimum contacts analysis under Rule 4(k)(2), which only requires contacts with the United States as a whole").

Second, for the reasons discussed above, exercise of jurisdiction over PVB would not comport with due process. First, general jurisdiction is foreclosed under *Daimler* because PVB is neither incorporated nor has its principal place of business anywhere in the United States, and is therefore not "at home" in the United States. *See, e.g., In re Platinum & Palladium Antitrust Litig.*, 2017 U.S. Dist. LEXIS 46624, at *127-*128 (S.D.N.Y. March 28, 2017) (citing *Daimler* to establish that a corporation must be "at home" and refusing to apply Rule 4(k)(2) to foreign-incorporated defendants).

Specific jurisdiction is similarly lacking. For specific jurisdiction, it is not sufficient to refer to random contacts that a defendant might have with the U.S. Rather, as the Supreme Court has explained, "suit related conduct must create a substantial connection with the forum state." *Walden*, 134 S. Ct. at 1121. In the context of personal jurisdiction under Rule 4(k)(2), the *Walden* rule requires a link between the cause of action and the alleged U.S. contacts. In *In re Platinum & Palladium Antitrust Litig.*, the court rejected the plaintiff's argument that there was personal jurisdiction under Rule 4(k)(2) because there was no link to the cause of action, stating: "[Defendant's] presence in the U.S. is irrelevant because continuous presence in the forum does not confer specific jurisdiction unless its presence involves suit related conduct." 2017 U.S. Dist. LEXIS 46624, at *135. Similarly, in *Bersoum v. Abotaeta*, 2017 U.S. Dist. LEXIS 127460, at *13 (S.D.N.Y. Aug. 10, 2017), the court held that the plaintiff's effort to establish personal jurisdiction under Rule 4(k)(2) did not meet constitutional muster, stating:

> This allegation [of U.S. conduct] is insufficient to show that Defendants are at home in the United States so supply the requisite minimum contacts for general jurisdiction and has nothing to do with the allegedly tortious conduct at issue in this case as might

supply minimum contacts for specific jurisdiction. [internal citations and quotations omitted].

See also *Cordice v. Liat Airlines*, 2015 U.S. Dist. LEXIS 126704, at *16 (E.D.N.Y. Sept. 22, 2015) (refusing to find jurisdiction under Rule 4(k)(2) because there was no assertion that injuries arose out of any purported contacts with United States).

The *Walden* rule thus defeats the Rule 4(k)(2) nationwide jurisdiction argument just as it defeats the New York jurisdiction argument. None of PVB's alleged links to the United States (namely, use of the banking system, ownership of a subsidiary, and financing for certain transactions) are related to the alleged wrongdoing giving rise to the claims here. *See* Compl. ¶ 53. Specific jurisdiction under Rule 4(k)(2) would not satisfy due process and is thus unavailable.

In sum, Plaintiff cannot establish jurisdiction over PVB in New York or (for its RICO claim) under the nationwide jurisdiction of Rule 4(k)(2). The Complaint should be dismissed in its entirety.

**Point II**

**THE CASE SHOULD ALSO BE**
**DISMISSED ON GROUNDS OF FORUM NON CONVENIENS**

**A. Legal Standard**

"The doctrine of forum non conveniens grants a court discretion, 'to resist imposition of its jurisdiction,' even though jurisdiction may be lawfully exercised and venue is technically proper, where the convenience of the parties and interests of justice favor trial in another forum." *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 419 (E.D.N.Y. 2009) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). As will be discussed below, everything about this case

concerns the Philippines and nothing happened in New York. But also significant is that Plaintiff himself has a presence in the Philippines. Indeed, the signature block on his email states that he has locations in Texas, Colorado and the Philippines (and the phone number in his signature block with the "63" country code is a Philippines phone number). de Ocampo Decl. ¶ 5 & Exh. B. Furthermore, Plaintiff's bio stresses his connections to the Philippines and says nothing about New York, as follows:

> Over the past two decades, Mr. Scott has spent a substantial part of his time in East and Southeast Asia, in general, and the Republic of the Philippines, in particular, focusing on cross-border disputes and otherwise assisting private and governmental entities navigate where business, policy and politics meet. . . . In the course of these activities, Mr. Scott has served as Special U.S. Legal Counsel to the Office of the President for the Republic of the Philippines and as Special Advisor to the Secretary of Finance for the Republic of the Philippines. Mr. Scott currently is Special Counsel to the Province of Marinduque, Republic of the Philippines.[6]

The Second Circuit applies a three-part test on a forum non conveniens motion. "At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access Indus.*, 416 F.3d 146, 153 (2d Cir. 2005); *see also, e.g., Realuyo v. Villa Abrille*, 2003 U.S. Dist. LEXIS 11529, at *33 (S.D.N.Y. July 8, 2003) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001)). "The decision to dismiss a case based on forum non conveniens is committed to the 'sound discretion' of the district court." *Lfoundry Rousset SAS v. ATMEL Corp.*, 2015 U.S. Dist. LEXIS 95165, at *8 (S.D.N.Y. July 21, 2015) (citing *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003)).

---

[6] See http://scott-llp.com/attorneys/walter-j-skip-scott-jr (last visited September 25, 2017).

Despite this Motion being styled as a motion to dismiss, the Court is not limited to the pleadings and need not accept as true Plaintiff's factual allegations. *Goldberg*, 660 F. Supp. 2d at 419. Instead, "[o]n a motion to dismiss pursuant to forum non conveniens, a court considers not only the allegations of the pleadings but all evidence before it, and does not presume the facts pleaded to be true." *Construtora Norberto Oberbrecht S.A. v. Gen. Elec. Co.*, 2007 U.S. Dist. LEXIS 79219, at *1 (S.D.N.Y. Oct. 12, 2007); *see also, Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158-59 (2d Cir. 1980) ("[I]t is the well-established practice ... to decide [forum non conveniens] motions on affidavits.").

Finally, "a court need not resolve [i] whether it has authority to adjudicate the cause (subject matter jurisdiction) or [ii] personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Thus, the Court may dismiss this action on the basis of forum non conveniens without reaching the personal jurisdiction issue. *See, e.g., ATMEL*, 2015 U.S. Dist. LEXIS 95165 (dismissing case based on forum non conveniens without reaching merits of personal jurisdiction defense).

### B. Plaintiff's Choice of This New York Forum For His Philippine Dispute Is Entitled To No Deference

"As an initial matter, the Court must determine the degree of deference that should be afforded to the plaintiff's choice of forum." *Realuyo*, 2003 U.S. Dist. LEXIS 11529, at *33 (citing, *e.g.*, *Iragorri*, 274 F.3d at 70-73). *Iragorri* succinctly explained this standard:

> [T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens. ... On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum shopping reasons ... the less deference the plaintiff's choice commands.

*Iragorri*, 274 F.3d at 71-72. In other words, "[d]eference increases the more the choice appears motivated by convenience, and decreases the more the choice appears motivated by forum shopping." *ATMEL*, 2015 U.S. Dist. LEXIS 95165, at *9. And, while there is a presumption of deference to the plaintiff's choice of forum, "[w]hen the plaintiff's choice is not its home forum … the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate in such cases is less reasonable." *Sinochem*, 549 U.S. at 430 (internal quotation marks omitted).

Plaintiff (who is also the Plaintiff's attorney) resides in Texas and, as detailed above, has a presence in the Philippines. de Ocampo Decl. ¶ 5 & Exh. B. All of the defendants and witnesses reside in the Philippines. This alone indicates forum shopping. *See ATMEL*, 2015 U.S. Dist. LEXIS 95165, at *10 (recognizing that "no party resides in New York" and collecting cases to establish that "[e]ven where some plaintiffs in a given action have connections to the United States, courts have declined significant deference to the decision to sue in New York). And, by suing outside his home forum, Plaintiff has lost the presumption in favor of his chosen forum that he would have had if he had sued in Texas.

Second, "the core operative facts" of this lawsuit—namely the alleged misrepresentations and fraudulent reorganization of a Philippine bank by Filipino actors under Philippine law—all occurred in the Philippines. This again supports a finding of forum shopping and a refusal to defer to Plaintiff's choice of forum. *See, e.g.*, *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 725 (S.D.N.Y. 2011) ("very limited deference" where litigation was based on "the operations of foreign entities outside of the United States"); *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 332 (S.D.N.Y. 2008) ("substantial deference" not warranted "because none of the significant events occurred in this jurisdiction.").

Perhaps most crucially, as established in this Motion, this Court lacks jurisdiction over PVB (or for that matter, any of the other Defendants). While this independently justifies dismissal due to a lack of jurisdiction, it also strongly supports a dismissal on the grounds of forum non conveniens. This is not a case where the only forum in which Plaintiff could establish jurisdiction is one that happened to be inconvenient. Indeed, it is the exact opposite—this Court both lacks jurisdiction over *any* Defendant and is incredibly inconvenient for *all* parties. Plaintiff's choice of forum is entitled to no deference whatsoever.

## C. The Philippines Provide An Adequate Alternative Forum

"An alternative forum is adequate if defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute." *Ilusorio v. Ilusorio-Bildner*, 103 F. Supp. 2d 672, 674 (S.D.N.Y. 2000) (collecting cases to conclude that the Philippines is an adequate alternative forum); *see also ATMEL*, 2015 U.S. Dist. LEXIS 95165, at *13 (quoting *Norex*, 416 F.3d at 157) ("An alternative forum is adequate if (1) 'it permits litigation of the subject matter of the dispute' and (2) 'the defendants are amenable to service of process there.'").

A forum is "usually ... adequate so long as it permits litigation of the subject matter of the dispute, provides adequate procedural safeguards and the remedy available in the alternative forum is not so inadequate as to amount to no remedy at all." *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000), *vacated on other grounds*, 294 F.3d 21 (2d Cir. 2002). Plaintiff's complaint tells the story of a straightforward commercial dispute. It does not matter that the courts in the Philippines might not provide precisely the same cause of action Plaintiff has alleged in this lawsuit. That is, "the possibility of an unfavorable change in the law' should not be given 'substantial weight' in the analysis." *ATMEL*, 2015 U.S. Dist. LEXIS 95165, at *13 (quoting *Piper Aircraft Co v. Reyno*, 545 U.S. 235, 249 (1981)). In other words, "the

unavailability of beneficial litigation procedures similar to those in the federal district courts does not render an alternative forum inadequate." *Blanco v. Banco Indus. de Venezuela*, 997 F.2d 974, 982 (2d Cir. 1993) (internal quotation marks omitted).

"Multiple courts [within the Second Circuit] have dismissed cases on forum non conveniens grounds, after finding that the Philippines represents an adequate alternative forum." *Realauyo*, 2003 U.S. Dist. LEXIS 11539, at *38 (collecting cases to conclude that "The Philippines offers an adequate alternative forum for this case"); *see also, e.g., Del Fierro v. PepsiCo Int'l*, 897 F. Supp. 59 (E.D.N.Y. 1995); *Transunion Corp. v. PepsiCo, Inc.*, 640 F. Supp. 1211, 1215 (S.D.N.Y. 1986), *aff'd* 811 F.2d 127 (2d Cir. 1987); *Cruz v. Maritime Co. of Philippines*, 549 F. Supp. 285, 289 (S.D.N.Y. 1982), *aff'd* 702 F.2d 47 (2d Cir. 1983).[7]

These courts' conclusion that the Philippines provides an adequate alternative forum is consistent with the expert opinion submitted by Philippine law expert Ramon Quisumbing. *See generally* Declaration of Ramon Quisumbing dated September 25, 2017 ("Quisumbing Decl."). Mr. Quisumbing, who has practiced in the Philippines for 26 years, explains that the Philippines court system would allow Plaintiff to pursue redress for the harms he alleges in the Complaint. *Id.* ¶¶ 3-4, 6-9. He further confirms that the Philippines court system would have jurisdiction over PVB. *Id.* ¶ 10. He even confirms that the Philippine courts would allow the Plaintiff to obtain discovery and to subpoena uncooperative witnesses to testify. *Id.* ¶¶ 12, 14. There can be no reasonable dispute that the Philippines is an adequate alternative forum.

The deep and consistent line of authority blessing the Philippines as an adequate alternative forum is thus well-founded. The Philippines judicial system is well-developed (and

---

[7] Courts outside of the Second Circuit have also routinely accepted the Philippines as an adequate alternative forum. *See, e.g., Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179-80 (9th Cir. 2006); *Qunitero v. Klaveness Ship Lines*, 914 F.2d 717, 728 (5th Cir. 1990).

indeed derived in part from the U.S. judicial system).  Quisumbing Decl. ¶ 5.  It can provide Plaintiff with any redress to which he may be entitled.  *Id.* ¶ 18.  This is confirmed by the uniform acceptance of the Philippines as an adequate alternative forum within the Second Circuit and by the other Circuit Courts to reach the issue.  Plaintiff cannot credibly argue—and has certainly pled no facts to suggest—that the Philippines is not an adequate alternative forum for his claims.

### D.    The Private Interest Factors Favor Pursuit of This Action in The Philippines

After identifying an adequate alternative forum, the Court must "balance the private and public interest factors to determine which forum 'will be most convenient and will best serve the ends of justice.'"  *Ilusorio*, 103 F. Supp. 2d at 675 (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 46 (2d Cir. 1996)).  The private interest factors to be considered include "(1) the ease of access to evidence; (2) the availability of compulsory process; (3) the cost for cooperative witnesses to attend trial (4) the enforceability of a judgment; and (5) other practical matters that might shorten any trial or make it less expensive."  *Ilusorio*, 103 F. Supp. 2d at 675-76 (citing *Gilbert*, 330 U.S. at 508).

These factors weigh heavily in favor of dismissal so that this action may be pursued in the Philippines.  First, "[t]he sources of proof relevant to this matter—documents and witnesses—are located overwhelmingly in the Philippines."  *Ilusorio*, 103 F. Supp. 2d at 676.  Indeed, every single one of the parties identified or in any way referenced in the Complaint is in the Philippines.

Second, those Filipino witnesses are beyond the subpoena power of this Court.  As explained in *Ilusorio*, "prospective third party witnesses located in the Philippines are beyond the subpoena power of the Court and cannot be compelled to appear at a trial in the United States … [because] Philippine law does not provide a procedure for compelling an unwilling Philippine

witness to appear in the United States." *Ilusorio*, 103 F. Supp. 2d at 677; *see also* Quisumbing Decl. ¶ 13. This is particularly troubling in light of the fact that "[t]he Second Circuit has recognized the importance of in-court witness testimony at trials involving fraud." *ATMEL*, 2015 U.S. Dist. LEXIS 95165, at *15 (citing *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002)).

Third, even were those witnesses willing to attend trial voluntarily, the cost to travel from the Philippines to New York to do so would be prohibitively expensive and disruptive. It would be much simpler and cheaper for those witnesses to appear and give evidence in the Philippines. *See Ilusorio*, 103 F. Supp. 2d at 677 ("The Court also recognizes the practical problems of trying this case in the United States. There would be considerable expense, including travel and lodging, in obtaining the attendance even of willing and cooperative third parties."); *c.f.* Quisumbing Decl. ¶¶ 13-14 (explaining that a Philippines court can compel the attendance of witnesses to testify in the Philippines).

Fourth, a judgment of a Philippines court that can be enforced directly against the defendants in the Philippines is much more likely to provide recovery to Plaintiff than a judgment from this Court which would have to be recognized, if possible, through additional enforcement proceedings in the Philippines. *See Ilusorio*, 103 F. Supp. 2d at 677 ("the Court presumes that plaintiff may enforce a Philippine judgment in the Philippines against defendants if they have assets there.").

Fifth and finally, there are no other practical matters favoring New York that would shorten the trial.

### E.    The Public Interest Factors Favor Pursuit of This Action in The Philippines

Public interest factors include "(1) administrative difficulties relating to court congestion; (2) imposing jury duty on citizens of the forum; (3) having local disputes settled locally; and

(4) avoiding problems associated with the application of foreign law." *Ilusorio*, 103 F. Supp. 2d at 678 (citing *Gilbert*, 330 U.S. at 508-09).

Each of these factors supports dismissal in favor of the Philippines. First, the Southern District of New York is one of the busiest courts in the United States, and at least as busy if not more so than the courts of the Philippines. *See Ilusorio*, 103 F. Supp. 2d at 678. This Court's docket should not be burdened with this potentially massive dispute that does not involve a single New York party. Relatedly, the citizens of New York should not be forced to serve on a jury to decide disputes between a citizen of Texas and Philippine banks and individuals that does not have any relation to or impact on their community. *Ilusorio*, 103 F. Supp. 2d at 678-79 ("The interest in protecting jurors from sitting on a case with such remote relevance to their own community weighs heavily in favor of dismissal").

Third, as repeatedly emphasized, this is decidedly not a local dispute. It is centered entirely in the Philippines and focuses on a series of meetings in the Philippines and a contract executed in the Philippines and governed by Philippine law. *See* de Ocampo Decl. ¶ 4 & Exh. A (MOA ¶ 14.03).[8] The dispute should therefore be decided in the Philippines consistent with the "significant interest in having localized matters decided at home with local law governing the case." *Ilusorio*, 103 F. Supp. 2d at 678. As in *Ilusorio*, this factor favors the Philippines because "this lawsuit has a most attenuated American connection." *Id.*; *see also ATMEL*, 2015 U.S. Dist. LEXIS 95165, at *17 ("the fraud was allegedly carried out through a transaction negotiated and

---

[8] A true and correct copy of the Memorandum of Agreement is attached as Exhibit A to the de Ocampo Decl. The Court may consider this agreement on this motion to dismiss because it was referenced in, but not attached to, the Complaint. *See* Compl. ¶ 71; *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2001) (district court may rely on contracts and other documents referenced in and that form the basis for claims in the complaint in ruling on motion to dismiss even if those documents are not attached to the complaint). Moreover, as noted above, a court may consider extrinsic evidence in ruling on a motion to dismiss for forum non conveniens. *See, e.g., Alcoa*, 654 F.2d at 158-59.

executed in France by French and German companies, with the help of a French consultant and French-based legal team. Thus France has a 'far greater interest' in this litigation in the United States ... .").

Finally, this case is highly likely to involve the application of Philippine law. Indeed, Plaintiff repeatedly references Philippine law throughout the Complaint and, as noted above, relies on a contract with a Philippine choice of law clause. *See, e.g.,* Compl. ¶¶ 83-87; de Ocampo Decl. ¶ 4 & Exh. A (MOA ¶ 14.03). While a full choice of law analysis is not required at this stage, "New York applies an 'interest analysis' to resolve conflicts in tort cases." *ATMEL*, 2015 U.S. Dist. LEXIS 95165, at *17 (citing *In re Optimal U.S. Litig.*, 837 F. Supp. 2d, 244, 261 (S.D.N.Y. 2011)). "When the law is one that regulates conduct, the law of the jurisdiction where the tort occurred generally applies." *Id.* It is thus likely that Philippine law would apply here because the alleged fraud took place in the Philippines. This factor, like the others, weighs in favor of dismissal. *See Ilusorio*, 103 F. Supp. 2d at 679 ("The court further notes that there is a considerable interest in avoiding the difficulty with questions of conflicts of law and the application of foreign law ... This Court lacks familiarity with Philippine law and believes that the uncertain task of addressing questions of Philippine substantive and procedural law is better left with the Philippine courts.").

Like the private interest factors, the public interest factors strongly favor dismissal in favor of the Philippines. This case belongs in the Philippines—not New York—and should therefore be dismissed on the basis of forum non conveniens.

**CONCLUSION**

For the reasons stated above, PVB respectfully requests that the Court dismiss all claims against it with prejudice and award it any and all other relief to which it is justly entitled.

Dated: September 27, 2017

Respectfully submitted,

BAKER & McKENZIE LLP

By: _____
David Zaslowsky

452 Fifth Avenue
New York, New York 10018
Telephone: +1 212 891 3518
Facsimile: +1 212 310 1718
David.Zaslowsky@bakermckenzie.com

**Attorneys for Defendants Philippines Veterans Bank**

**CERTIFICATE OF SERVICE**

On September 27, 2017, I caused a true and correct copy of the above and foregoing Memorandum Of Law In Support Of Motion To Dismiss By Defendant Philippines Veterans Bank to be served through the Court's ECF system on:

Walter J. Scott, Jr.
Reda M. Hicks
skip@scott-llp.com
SCOTT LAW GROUP LLP
3249 Lake Drive
Southlake, Texas 76092

I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on September 27, 2017.

_____
Anne Zagorin